# UNITED STATES DISTRICT COURT



### SEALED

for the

Eastern District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>2315 HIGHWAY 190 APARTMENT J HAMMOND,<br>LOUISIANA 70401 (TARGET LOCATION #1) | )<br>)<br>)    Case No.  24-mc-2414<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the _____Eastern_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with the Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 846 | Attempt and Conspiracy |
| 18 U.S.C §§ 1956 (h); 1956 (a)(1)(B) | Laundering of monetary instruments |
| 18 U.S.C § 1343 | Fraud by wire, radio, or television |
| 18 U.S.C § 1001 | Knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact |
| 18 U.S.C § 924(c)(1)(A) | Any person who, during and in relation to any crime of violence or drug trafficking crime uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____/s/ Forrest Reed_____
*Applicant's signature*

Forrest Reed, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____10/7/24_____

*Judge's signature*

City and state:  New Orleans, Louisiana

Honorable Karen Wells Roby, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A – TARGET LOCATION TO BE SEARCHED**

**DESCRIPTION OF LOCATION TO BE SEARCHED:**

**RESIDENCE 1:**  2315 Highway 190 Apartment J Hammond, Louisiana 70401. The target residence is a white vinyl siding apartment with green shutters. The apartment is the last apartment door on the east side when you pull into the apartment complex.

**OTHER LOCATIONS TO BE SEARCHED:** All automobiles and outdoor buildings located within the area directly related to Apartment J.



## <u>ATTACHMENT B – ITEMS TO BE SEIZED</u>

Any and all evidence and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) (distribution and possession with intent to distribute controlled substances), Section 846 (conspiracy to distribute and possess with intent to distribute controlled substances), 18 USC 1956(h); 1956(a)(1)(B) (Money Laundering), 18 USC 1343 (Wire Fraud), and 18 USC 1001 (False Statements).

a. Any and all financial records relating to drug trafficking, including but not limited to records documenting the receipt and disposition of U.S. currency or currency equivalents, including bank records, receipts, credit card statements, statements relating to investment/brokerage accounts, bank statements, checks, deposit tickets and items, cashier's checks, money orders by whatever form, bank drafts or notes, traveler's checks, wire transfer records, cash disbursement journals or ledgers, cash receipts journals or ledgers, sales receipts, inventory listings, accounts payable records, safe deposit box records and keys, storage facility records and keys, insurance records, records and receipts of expenditures of funds, tax returns, expense or profit records, lease or rental agreement or records, federal and state income tax returns, and any other documents recording or relating to the acquisition, conversion, movement, secreting, transfer, and disbursement of currency and currency equivalents, including any records identifying the source of the receipt and disposition of such funds, such as Currency Transaction Reports (CTRs) and Forms 8300;

b. Records showing indicia of ownership of vehicles or other means of transportation, including records relating to the purchase and sale of automobiles;

c. Any and all records of warehouse, house, or apartment leases/purchases;

d.  Any and all records of business or personal travel;

e.  Records and documents reflecting names of individuals or business entities including names, addresses, and telephone numbers, which relate to the business operations conducted by and on behalf of the drug trafficking organization or its members;

f.  Records and items indicating occupancy, residency, and/or ownership of the premises, including bills, lease agreements, loan documents, photographs, envelopes, and personal papers;

g.  Photographs, and/or slides depicting assets purchased by members of the drug trafficking organization or members of the drug trafficking organization associating together;

h.  Any and all correspondences, work papers, and notes related to the drug trafficking organization;

i.  Wireless communication devices and internet-connected devices, tablets and computers;

j.  Any and all secured and/or locked safes, cabinets, boxes, and hidden compartments, wherein documents, drugs, and/or currency may be located;

k.  Narcotics and/or other controlled substances, paraphernalia or equipment used in the preparation, packaging, concealment, or distribution of controlled substances;

l.  Firearms used in furtherance of drug trafficking;

m. Evidence of user attribution showing who used or owned any cellular telephones that are seized;

n.  Any cellular telephones, probable cause to search said phones without another warrant having been established in the affidavit;

o.  Controlled Substances;

p.  Paraphernalia for packaging, cutting, weighting, and distributing controlled substances, including, but not limited to, scales, baggies, and spoons; and

q.  United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**   

IN THE MATTER OF THE SEARCH OF       *          Search Warrant No.: 24-mc-2414
2315 HIGHWAY 190 APARTMENT J
HAMMOND, LOUISIANA 70401             *
(TARGET LOCATION #1)
                                     *

          *          *          *

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Forrest Reed, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.  I am a Special Agent with the U.S. Drug Enforcement Administration ("DEA"), having been employed by DEA since February 2022. I am currently assigned to the New Orleans Divisional Office and was previously employed with the Horry County, South Carolina, Police Department; the Conway, South Carolina Police Department; and the Wayne, West Virginia Police Department. During that time, I was involved in numerous investigations relating to the transportation and distribution of illegal drugs.

2.      As a DEA Special Agent, I have conducted investigations of unlawful drug distribution in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.  As part of these investigations, I have conducted or participated in electronic and physical surveillance, surveillance of undercover transactions, the introduction of undercover officers, the execution of search warrants, debriefings of cooperating sources, reviews of taped conversations, drug records, and wire intercept investigations.

3.      Additionally, I have conducted follow-up investigations concerning the concealment of assets, money, bank records, and the identification of co-conspirators through the use of ledgers, telephone bills and records, photographs, and bank checks, all as related to drug trafficking.  Through training, education, and experience I am familiar with the manner in which illegal drugs are transported, stored, distributed, and the methods of payment for such drugs.

a.   Drug traffickers often place assets in names and/or with individuals other than themselves in order to avoid detection by law enforcement officials.

b.   Drug traffickers commonly conduct financial transactions in currency in order to avoid documentation of their purchases and expenditures, thus making it more difficult to track these transactions.

c.   Drug traffickers maintain books, records, receipts, notes, ledgers, and other papers relating to the procurement, distribution, storage, and transportation of controlled substances to include records showing the phone numbers, the number of billings, parking stubs, hotel reservations, and paraphernalia utilized to dilute and package-controlled substances. These aforementioned items are commonly maintained in locations frequented by drug traffickers, such as homes, businesses and automobiles.

      d.   Persons engaged in drug trafficking commonly conceal large amounts of currency, financial instruments, precious metals and other items of value constituting proceeds of the drug trafficking activities in their residences, businesses, and automobiles in an effort to conceal their illicit activities.

4.     I am aware, through his law enforcement experience, that individuals engaged in drug trafficking frequently maintain firearms and weapons to protect both controlled substances and the cash proceeds.

5.     I am also aware that drug traffickers will often use "stash houses" in order to conceal large amounts of drugs and bulk currency, rather than store them at their primary domicile.

## SEARCH LOCATIONS

6.     I make this affidavit in support of a search warrant to search the premises described in Attachment A, namely:

      a.   2315 Highway 190 Apartment J Hammond, Louisiana 70401 (hereinafter **Target Location #1**), for the items described in Attachment B;

      b.   41107 N 1st Street Ponchatoula, Louisiana 70454 (hereinafter **Target Location #2**), for the items described in Attachment B;

      c.   280 Washington Street Ponchatoula, Louisiana 70454 (hereinafter **Target Location #3**) and for the items described in Attachment B.

7.     The facts in this affidavit come from my personal observations, controlled purchases of drugs, administrative subpoenas, physical surveillance, pole cameras, confidential sources, search warrants for geolocation information, pen registers, grand-jury subpoenas, wire intercepts, and other techniques. This affidavit is intended to show merely that there is sufficient

probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

8.      Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846, as well as 18 U.S.C §§ 1956(h), 1956 (a)(1)(B), 18 U.S.C § 1343, 18 U.S.C § 1001, and 18 U.S.C § 924(c)(1)(A), hereinafter Target Offenses, have been committed by John TICKLES JR (TICKLES JR), and others known and unknown in the Eastern District of Louisiana (EDLA) and other areas. There is also probable cause to search the premises described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes further described in Attachment B.

## PROBABLE CAUSE
### Background

9.      On June 15, 2023, TICKLES JR was arrested by the Ponchatoula (LA) Police Department after search warrants were conducted at his residence and another residence[1] associated with him. During the search, several types of drugs and a firearm were seized. TICKLES JR was booked with state drug and firearm offenses at the Tangipahoa Parish Jail and was later released on bond.  These charges are currently pending. DEA and supporting agencies learned that TICKLES JR returned to distributing drugs in the Hammond, LA and Ponchatoula areas after his release from jail, and since November 2023, DEA has been investigating him for the Target Offenses.

10.      As part of the ongoing investigation DEA identified (985) 981-3225, hereinafter Target Telephone #1, as a telephone number used by TICKLES JR.

---

[1] Target Location #1

11.    On November 29, 2023, DEA obtained the first of eleven geolocation warrants[2] for Target Telephone #1.  The radius for Target Telephone #1's location was not very precise but combined with physical surveillance and later with electronic surveillance, I was able to identify locations frequented by TICKLES JR, including Target Locations #1, #2 and #3.

### Three Controlled Purchases by a Confidential Source from TICKLES JR

12.    On November 15, 2023, February 22, 2024, and April 30, 2024, DEA utilized a confidential source and purchased large quantities of counterfeit pills containing fentanyl, "hereinafter "pills"),[3] from TICKLES JR who utilized Target Telephone #1 to coordinate each purchase. During the November controlled purchase TICKLES JR departed Target Location #1 just prior to meeting the confidential source. Furthermore, during the April controlled purchase TICKLES JR departed a Hammond area residence[4] (hereinafter "Former Target Location"), just prior to meeting the confidential source.  All the evidence obtained during the controlled purchases was submitted to the DEA Southeast Laboratory for chemical analysis and the results were positive for fentanyl.

13.    While DEA only purchased pills from TICKLES JR, I learned through other sources that TICKLES JR also distributed powdered fentanyl/heroin, cocaine, crystal methamphetamine, marijuana, and other drugs.  This information was corroborated upon the subsequent interception of TICKLES JR's communications where he regularly distributed various quantities of the aforementioned drugs.

---

[2] Each geolocation warrant was for 30 days, and the last one obtained for Target Telephone #1 was 09-09-2024. Furthermore on 09-16-2024 a geolocation warrant was obtained for telephone number (985) 687-3596 a recently acquired (09-2024) telephone number used by TICKLES JR.
[3] Counterfeit prescription pills containing fentanyl refer to clandestine manufactured blue pills marked with an "M" and a "30" and made to resemble Oxycodone.
[4] 18325 Miller Lane, Hammond, LA a residence used by TICKLES JR during the investigation (Former Target Location)

14.    On June 21, 2024, the Honorable Brandon Long, U.S. District Court Judge for the EDLA, granted an order[5] to intercept wire and electronic[6] communications over Target Telephone #1.    Between June 24, 2024, and July 23, 2024, DEA intercepted approximately 1900 communications between TICKLES JR's and other subjects relative to the Target Offenses.

15.    On August 12, 2024, Judge Long granted an order[7] to continue the intercept of communications over Target Telephone #1.    Between August 13, 2024, and September 10, 2024, DEA intercepted approximately 1990 communications between TICKLES JR and other subjects relative to the Target Offenses.

16.    These intercepted communications in conjunction with other investigative techniques, revealed that TICKLES JR had multiple sources for the different types of drugs he distributed.    TICKLES JR supplied drugs to approximately 40 or more customers and would meet these customers at Target Locations #1, #2, and #3 along with multiple locations in Ponchatoula and Hammond. TICKLES JR utilized multiple vehicles and would travel to meet customers at these different locations.    Furthermore, several of the intercepted communications were directly related to drug transactions at the Target Locations as documented below.

**Former Target Location**

**18325 Miller Lane Lot 59 Hammond, Louisiana**

17.    The Former Target Location was home to Krishundria PITTS, one of TICKLES JR's romantic partners.    She recently moved from this residence.    Although I am not applying for a search warrant at the Former Target Location, contained below are brief details that assist in defining TICKLES JR's drug trafficking operation.

---

[5] Filed under Misc. No. 24-mc-1598
[6] Wire communications are telephone calls and electronic communications are text messages.
[7] Filed under Misc. No. 24-mc-1598

18.     On August 27, 2024, DEA intercepted a communication[8] between TICKLES JR and PITTS.  The following conversation ensued (abbreviated version); TICKLES JR asked PITTS if he left a bag out with "them pills" in it. PITTS asked TICKLES JR "the blue pills and another bag?" TICKLES JR replied, "yeah yeah yeah". PITTS said "yeah. It's right here on the floor in front of the uhh in front the fan. And your gun is here". TICKLES JR: "okay man I don't need that gun".  PITTS lived at the Former Target Location and during the time of this call, geolocation information on Target Telephone #1 revealed TICKLES JR was near the Former Target Location.

19.     On the same date and approximately 30 minutes later, DEA intercepted a communication between TICKLES JR and HIGHTOWER.  TICKLES JR told HIGHTOWER that he had to run back to the house (referring to the above communication with PITTS and the Former Target Location) and asked HIGHTOWER what he had wanted.  HIGHTOWER told TICKLES JR "the 500 pills". TICKLES JR told HIGHTOWER to meet him at the Waffle House[9.]  Agents established surveillance at the Waffle House and observed a hand-to-hand transaction with HIGHTOWER through the driver's window of HIGHTOWER's vehicle.  Agents discontinued surveillance a short time later.

20.     The Former Target Location and the above details reveal that TICKLES JR maintained a firearm and stored drugs inside the residence.  It is more than likely that TICKLES JR would do the same at the other Target Locations.

_____

[8] Intercepted Session #13,098 over Target Telephone #1
[9] 43145 S. Airport Road Hammond, LA

**Target Location #1**

**2315 Highway 190 Apartment J Hammond, Louisiana 70401**

21.     Since January 2024 to present, Target Location #1 has been identified as TICKLES

JR's primary residence.  The investigation revealed that Karel Johnson and two young children[10]

reside with TICKLES JR at Target Location #1.  TICKLES JR sleeps most nights at Target

Location #1.  I, with the assistance of electronic surveillance installed in January of 2024, observed

TICKLES JR conduct numerous hand-to-hand drug transactions with known and unknown

individuals at Target Location #1. TICKLES JR would routinely exit the front door of the

residence, walk to his vehicle, which was usually parked along the northern side of the residence,

and sit in the driver's seat with the door open. When a drug customer arrived, they would park their

vehicle in front of TICKLES JR's residence, walk to TICKLES JR's vehicle, and conduct a hand-

to-hand drug transaction or suspected drug transaction.  At times, TICKLES JR would walk from

his vehicle to the drug customer's vehicle and conduct the drug transaction.  On multiple occasions,

TICKLES JR departed Target Location #1 and drove directly to another location, such as a local

business parking lot, and distributed drugs to a customer. Below are a few specific instances related

to Target Location #1 and the Target Offenses.

22.     As mentioned above, on November 15, 2023, during the first controlled purchase,

TICKLES JR traveled directly from Target Location #1 to the confidential source's location where

TICKLES JR distributed drugs to the confidential source.

---

[10] Johnson is one of TICKLES JR's girlfriends and they are the parents of the two young children at Target Location #1.

23.    On June 25, 2024, DEA intercepted a communication[11] between TICKLES JR and Kelli LANDRY, a frequent drug customer. K LANDRY used coded language[12] and ordered small quantities of marijuana, cocaine and heroin from TICKLES JR. K LANDRY asked TICKLES JR where she needed to go and TICKLES JR told K LANDRY, "I'm at the apartment". Geolocation and electronic surveillance revealed that TICKLES JR was at Target Location #1.

24.    On the same date, K LANDRY arrived at Target Location #1 in a Chevrolet Malibu, a vehicle normally driven by Seth LANDRY, who is also a drug customer of TICKLES JR. K LANDRY exited the driver's seat and walked to TICKLES JR's vehicle parked along the northern side of the residence. At the same time, TICKLES JR exited Target Location #1, walked to his vehicle and met with K LANDRY. After a few minutes, K LANDRY walked back to the passenger window of her vehicle and appeared to retrieve something from a white male, believed to be S LANDRY, then walked back to TICKLES JR. A few minutes later, K. LANDRY walked to the passenger window of her vehicle and appeared to hand the passenger something before walking back to TICKLES JR's vehicle. A few minutes later, K. LANDRY returned to the Malibu and left.

25.    On July 2, 2024, DEA intercepted communications which revealed K LANDRY ordered drugs from TICKLES JR. Afterwards, agents observed TICKLES JR conduct a hand-to-hand drug transaction with K LANDRY at a Hammond area business located in the proximity of Target Location #1. Agents monitored K LANDRY after she departed the business, and an assisting Hammond Police Department officer conducted a traffic stop on K LANDRY.

---

[11] Intercepted Session #265 over Target Telephone #1

[12] Coded language refers to TICKLES JR and/or his customers/associates using common words to reference drugs, such as "boy" in place of heroin, "blues" in place of pills, "girl" in place of cocaine, and "ice" in place of crystal methamphetamine. I and other DEA Agents were familiar with the coded language while deciphering intercepted communications. Subsequent drug seizures verified the meanings of the coded language.

The officer located fentanyl and cocaine in K LANDRY's possession, and she was arrested for state drug violations. Upon bonding out of jail, K LANDRY continued to order and obtain drugs from TICKLES JR during the ongoing investigation. The analysis from the DEA Laboratory was positive for cocaine and a combination of fentanyl/heroin.

26.    On July 22, 2024, electronic surveillance at Target Location #1 revealed that TICKLES JR exited the front door and walked out of view around the north side of the residence. Approximately five minutes later Conner MARTENS arrived at Target Location #1. MARTENS exited the Jeep and walked to north side of Target Location #1 where TICKLES JR was last seen. Approximately two minutes later, MARTENS emerged from the north side of Target Location #1 and jogged back to the jeep with what appeared to be a small plastic baggie in his hands. MARTENS entered the Jeep and departed the area. At the same time, TICKLES JR emerged from the north side of Target Location #1 and entered the front door. Approximately three hours later, TICKLES JR's gray Dodge emerged from the north side of Target Location #1 and departed the area.

27.    I believe that TICKLES JR retrieved drugs from his vehicle then completed a hand-to-hand drug transaction with MARTENS by the vehicle. I observed, what appeared to be, a clear plastic baggie in MARTENS' hands as he jogged back to the Jeep, and I knows that clear plastic baggies are commonly used to store drugs. Additionally, MARTENS' two-minute visit is common practice when a drug customer meets with their source of supply. Furthermore, on other occasions DEA intercepted communications between MARTENS and TICKLES JR where MARTENS arranged the purchase of drugs from TICKLES JR. Also, it is important to note that TICKLES JR immediately walked back inside Target Location #1 after MARTENS departed the area. I believe that TICKLES JR may have stored the money obtained from MARTEN inside the residence.

28.     On August 18, 2024, DEA intercepted a communication[13] between TICKLES JR and Robert HINES where HINES used coded language and ordered 2,500 pills.  TICKLES JR agreed to allow HINES to pay him $800 in cash at the time of the transaction and the remaining amount via Cash App[14.]  TICKLES JR and HINES then agreed to meet after TICKLES JR counted the pills.  Agents utilized geolocation and electronic surveillance to locate TICKLES JR at the Former Target Location.

29.     Later that same day, DEA intercepted another communication[15] between TICKLES JR and HINES where TICKLES JR asked HINES if he was going to come get the pills.  HINES told TICKLES JR he could come whenever TICKLES JR was ready. TICKLES JR told HINES to give him a few minutes.

30.     A short time later, agents observed TICKLES JR leave the Former Target Location in his white Buick.  A few minutes later, surveillance observed TICKLES JR complete a hand-to-hand drug transaction at a nearby business with an unknown individual. While agents continued surveillance on TICKLES JR a third intercepted communication[16] occurred between TICKLES JR and HINES where they discussed the amount of money for the pills.  TICKLES JR told HINES to meet him at Target Location #1.  Approximately 15 minutes later TICKLES JR arrived at Target Location #1 and parked on the north side of the residence.  TICKELS JR did not emerge from the Buick.

31.     Approximately ten minutes later, HINES arrived at Target Location #1 and parked in front of the residence.  After another ten minutes, TICKLES JR exited the Buick and walked to

---

[13] Intercepted Session #11,077 over Target Telephone #1
[14] Cash App allows a person to transfer money from their account to another person's account and is regularly used by individuals involved in drug trafficking.
[15] Intercepted Session #11,109 over Target Telephone #1
[16] Intercepted Session #11,132 over Target Telephone #1

the passenger side of HINES' truck.  TICKLES JR opened the front passenger side door of HINES' truck and leaned inside.  Eventually TICKLES JR sat down in the passenger side seat of HINES' truck.  After a few minutes, TICKLES JR exited HINES' truck and walked back to his vehicle while HINES left the area in his truck.

32.    DEA followed HINES and observed him leave a quantity of pills at a gas station and discard more pills from his vehicle in a nearby parking lot of a restaurant.  A Hammond Police Department officer detained HINES and in all agents recovered approximately 2,500 pills, crack cocaine, and methamphetamine tablets.  HINES was arrested for state drug violations.  It has not yet been determined if HINES obtained the crack cocaine and methamphetamine tablets from TICKLES JR.  The analysis from the DEA Laboratory was positive for fentanyl (pills), cocaine base and methamphetamine.

33.    The investigation revealed that TICKLES JR regularly distributed drugs from Target Location #1.  TICKLES JR usually conducted hand-to-hand transactions in front of or on the side of the residence while in his vehicle or at the customer's vehicle.  TICKLES JR entered and exited Target Location #1 in the course of meeting with and selling drugs to customers.  I believe that TICKLES JR stores drugs inside Target Location #1 and/or in his vehicle parked at Target Location #1.  I also believe that the funds acquired from TICKLES JR's drug sales may be stored inside Target Location #1 and/or inside his vehicle[17] parked at Target Location #1.  Since the end of the intercepted communications over Target Telephone #1, I have continued monitoring geolocation information and electronic surveillance, and both continue to regularly reveal TICKLES JR and his vehicle at Target Location #1.

---

[17] TICKLES JR used multiple vehicles during the investigation.

Furthermore, within the last week electronic surveillance at Target Location #1 captured TICKLES JR meeting with a high-level crystal methamphetamine source of supply and another upper-level drug trafficker.

**Target Location #2**

**41107 N 1st Street Ponchatoula, Louisiana 70454**

34.    Since January 2024 to present, Target Location #2 is John TICKLES SR's residence, and a location that TICKLES JR frequents.  TICKLES SR, the father of TICKLES JR, lives with his unidentified girlfriend at Target Location #2.  This has been confirmed through CS information.  It is also TICKLES SR's address on record with his probation officer.

35.    During the investigation, I learned through geolocation information and surveillance that TICKLES JR keeps multiple vehicles at Target Location #2. TICKLES JR displayed a pattern of keeping drugs split between his vehicles. TICKLES JR would travel to Target Location #2 to obtain drugs from one of his vehicles and/or Target Location #2.  Agents observed TICKLES JR utilize these vehicles to transport and distribute drugs.  I observed TICKLES JR arrive at Target Location #2, then leave and distribute drugs to known and unknown individuals.  DEA also intercepted communications where a drug customer was told by TICKLES JR that he did not have a specific drug in his possession.  TICKLES JR would have to obtain the drug at a different location.   During these times, geolocation revealed Target Telephone #1 in the area of Target Location #2.  After TICKLES JR left TICKLES SR's residence, TICKLES JR would conduct the drug transaction with the customer.  The investigation did not reveal another residence or structure accessed by TICKLES JR in the area of Target Location #2.  Therefore, when geolocation on Target Telephone #1 alerts to the area of Target Location #2 I believe TICKLES, JR is at Target Location #2.

Additionally, I and other agents visually confirmed that TICKLES JR was located at Target Location #2 when geolocation placed Target Telephone #1 in that area.   Agents have intercepted phone calls between TICKLES JR and TICKLES SR.  During these calls, TICKLES SR asked TICKLES JR for marijuana on numerous occasions. TICKLES SR also asked TICKLES JR if he was good on the cocaine, referencing to see if TICKLES JR still had enough.  During some calls, TICKLES SR would inform TICKLES JR that he knows individuals who are-in-need of drugs. Additionally, TICKLES SR would call TICKLES JR and inform him about the location of police officers so TICKLES JR could avoid that area.

36.    On June 28, 2024, DEA intercepted a communication[18] between TICKLES SR and TICKLES JR.  TICKLES SR told TICKLES JR that "Dog", who is an unidentified male, wanted to get in contact with TICKLES JR. "Dog" immediately got on TICKLES SR's phone and "Dog" asked TICKLES JR for some "drank".  TICKLES JR agreed to meet "Dog" and TICKLES SR. "Dog" told TICKLES JR that he would call him when he got on Range Road which is located in Ponchatoula. TICKLES SR got back on the phone and told TICKLES JR to "come on through" then the conversation ended.

37.    I reviewed geolocation information on Target Telephone #1, and it was in the area of Range Road approximately two hours after the aforementioned intercepted communication.  I believes TICKLES SR called TICKLES JR to facilitate the illegal purchase of "drank" by "Dog" from TICKLES JR. "Drank" is a common coded language for promethazine, a Schedule V CDS.

38.    On July 19, 2024, DEA intercepted communications[19] between TICKLES SR and TICKLES JR.  TICKLES JR asked TICKLES SR if he was still at the house, referring to Target Location #2. TICKLES SR said yeah.  TICKLES JR told TICKLES SR to go in the room because

---

[18] Intercepted Session #1059 over Target Telephone #1
[19] Intercepted Sessions #5626 and #5627 over Target Telephone #1

he had a "lil perc" in his sock that he left at Target Location #2. TICKLES SR agreed and ultimately found the "perc" in Target Location #2. I believe that TICKLES JR left a Percocet in a sock located at Target Location #2.

39.     On August 13, 2024, DEA intercepted a communication[20] between TICKLES SR and TICKLES JR. TICKLES SR asked TICKLES JR when he was coming by Target Location #2 so they could smoke together. TICKLES JR stated that he would be back later. I believe TICKLES SR wanted to smoke marijuana with TICKLES JR. This is based on other intercepted conversations between them where marijuana is a topic of conversation.

40.     On August 17, 2024, at approximately 3:51 PM, DEA intercepted a communication[21] between TICKLES SR and TICKLES JR. TICKLES SR told TICKLES JR "I need some fucking smoke, man". TICKLES JR told TICKLES SR "yeah, I needed some too. I got a lil bit though. I'll bring you a lil bit". TICKLES JR and TICKLES SR agreed to meet later when they were in the same area. I know the term "smoke" is coded language for marijuana.

41.     On August 17, 2024, at approximately 3:54 PM, DEA intercepted a communication[22] between TICKLES SR and TICKLES JR. The following conversation is in a verbatim version:

42.      Parties Greet

43.     TICKLES JR: "yeah, I'm about to just smoke your lil weed i found."

44.     TICKLES SR: "huh?"

45.     TICKLES JR: "you had must stuck some weed, must have stuck some weed in like the lil license plate part in the front. In the…."

---

[20] Intercepted Session #10117 over Target Telephone #1
[21] Intercepted Session #10,925 over Target Telephone #1
[22] Intercepted Session #10,933 over Target Telephone #1

46.    TICKLES SR: "I damn sure did cuz. I damn sure did, man. I knew I had left my shit somewhere boy."

47.    TICKLES JR: "you tried to move fast. Just stashed it right quick."

48.    TICKLES SR: "yeah. Hey, when you took that car I was like, damn, I'm forgetting something."

49.    TICKLES JR: "look uh…gucci, Gucci was under the car. When he was under the car I was looking at the front so I seen like a lil uh…I seen the cigar pack sticking out. I'm like damn, why cigar pack sticking out? So I pull that bitch out. I found the smoke bag."

50.    TICKLES SR: "how much was in there?"

51.    TICKLES JR: "they got a lil… like 2 lil bags. Like a lil bag with like about 2 grams."

52.    TICKLES SR: "yeah like… what you got?"

53.    TICKLES JR: "I got, shit I got a lil something."

54.    TICKLES SR: "some grams?"

55.    TICKLES JR: "yeah"

56.    TICKLES SR: "alright, alright. I'll be over there in a minute."

57.    General Conversation begins then the call ends

58.    I believe TICKLES JR had switched his vehicles at Target Location #2. Once TICKLES JR switched vehicles, he found two small bags of marijuana under the vehicle that TICKLES SR had at Target Location #2. As the conversation continued, TICKLES SR asked TICKLES JR if had anything (i.e. yeah like…what you got). TICKLES JR told TICKLES SR that he had some grams on him. The term "grams" is a common language used to describe the weight of a drug.

16

59.    DEA intercepted other communications between TICKLES SR and TICKLES JR. The majority of the remaining calls involved TICKLES SR checking on TICKLES JR's safety. Also, TICKLES SR regularly called TICKLES JR to warn him about law enforcement's location/activity so TICKLES JR could avoid encounters with law enforcement.

60.    I believe that TICKLES SR allows TICKLES JR to leave his vehicles at Target Location #2 with drugs stored inside of them based on intercepted communications between TICKLES SR and TICKLES JR. TICKLES SR showed a pattern during the wire intercepts that he assists TICKLES JR with TICKLES JR's drug operations by connecting TICKLES JR to drug customers.  TICKLES SR also obtains drugs directly from TICKLES JR.  It is common for drug distributors to store drugs and/or drug proceeds at other residences aside from their primary residence to avoid detection from law enforcement. I believe that Target Location #2, where TICKLES SR resides, is another location used by TICKLES JR to store drugs and/or drug proceeds along with Target Location #1.

61.    TICKLES SR's criminal history consists of drug arrests dating back to 1990. TICKLES SR is currently on state probation until the year 2037 for an arrest that occurred in 2017, where he was convicted for distributing cocaine.

62.    I have continued monitoring geolocation information and toll records on TICKLES JR.  Both show that TICKLES JR and TICKELS SR continue to communicate and meet. Geolocation continues to reveal Target Telephone #1 in the area of Target Location #2, which is consistent with TICKLES JR's day to day drug operation. Agents have made periodic passes by Target Location #2 since the completion of the wire intercept. Specifically, on October 1, 2024, agents observed two of TICKLES JR's vehicles parked at Target Location #2.  The investigation revealed that TICKLES JR used both of those vehicles to sell drugs.  As stated above, I know that

TICKLES JR distributes drugs from all of his vehicles and also stores drugs in other vehicles that were left parked at Target Location #2.

**Target Location #3**

**280 Washington Street Ponchatoula, Louisiana 70454**

63.    In June 2024, I received information that Rashun HUTCHINSON was a mid-level drug distributor in Ponchatoula. Through CS information and surveillance, agents identified HUTCHINSON's primary residence as Target Location #3.  Agents observed a black in color BMW parked in the driveway of Target Location #3.  I located Louisiana license plate number, 983GWK, matching the black BMW, registered to HUTCHINSON through proven reliable databases.  HUTCHINSON is a drug customer of TICKLES JR.

64.    During the wire intercept, I learned that HUTCHINSON purchased a variety of drugs from TICKLES JR and distributed the drugs to his own customers. On occasions geolocation positioned Target Telephone #1 in the area of Target Location #3 when HUTCHINSON called TICKLES JR to purchase drugs.  In conjunction with these times, electronic surveillance showed TICKLES JR's vehicle at Target Location #3.  Additionally, DEA intercepted communications where TICKLES JR directed his customers to meet him at Target Location #3.

65.    Since August 2024 to present, I monitored electronic surveillance on Target Location #3. During this time, I observed HUTCHINSON meeting with several unknown individuals at the residence. I observed HUTCHINSON appear from an area of Target Location #3 and sit in his vehicle with the driver's door open.  Unknown individuals would park in front of Target Location #3 and appear to conduct a hand-to-hand drug transaction with HUTCHINSON in the driver's seat of his vehicle.  At times, HUTCHINSON would walk to the drug customer's vehicles and complete the hand-to-hand drug transactions.

66.    As mentioned above, during the wire intercept of Target Telephone #1, DEA obtained multiple communications between HUTCHINSON and TICKLES JR.  Listed below are examples of those intercepted communications.

67.    On July 2, 2024, at approximately 10:13 PM, DEA intercepted a communication[23] between HUTCHINSON and TICKLES JR.  HUTCHINSON told TICKLES JR" I need a lil half…I need a lil half right quick. Ice cream". TICKLES JR told HUTCHINSON that he was about to come back down there.

68.    I believes HUTCHINSON asked TICKLES JR to bring him a half ounce of crystal methamphetamine (i.e. I need a lil half…I need a lil half right quick). Agents know HUTCHINSON to sell ounce quantities of crystal methamphetamine and believe HUTCHINSON wanted to purchase a half ounce of crystal methamphetamine from TICKLES JR.  Is knows "ice cream" is coded language for crystal methamphetamine.  Furthermore, when TICKLES JR said he was about to head back down there he was referring to Target Location #3.

69.    I reviewed geolocation information on Target Telephone #1 for July 2, 2024, and it revealed TICKLES JR was in the area of Target Location #3 approximately one hour and forty-five minutes after HUTCHINSON ordered crystal methamphetamine from TICKLES JR.

70.    On July 12, 2024, at approximately 9:11 PM, DEA intercepted a communication[24] between HUTCHINSON and TICKLES JR.  HUTCHINSON asked TICKLES JR for a "k pack" which is 1,000 pills.  TICKLES JR said that he had to go get them because he did not have 1,000 on him. HUTCHINSON told TICKLES JR that he had someone that wanted to get 500 from him. TICKLES JR told him to give him a few minutes.

---

[23] Intercepted Session #2025 over Target Telephone #1
[24] Intercepted Session #4211 over Target Telephone #1

71.    Agents know that when someone purchased one-thousand pills they referred to them as "k packs". Geolocation did not show TICKLES JR's cell phone positioned near Target Location #3 during this time. It is possible that HUTCHINSON met with TICKLES JR at an unknown location and ultimately completed this drug transactions.

72.    On August 28, 2024, via electronic surveillance, I observed HUTCHINSON walk from the area of Target Location #3 and enter the driver's seat of his black BMW with the driver's door open.  Approximately five minutes later, a gray vehicle parked in front of HUTCHINSON's vehicle.  An unknown black female exited the gray vehicle and meet with HUTCHINSON at his driver's door.  A few minutes later, the unknown black female returned to her vehicle and left the area.  At the same time, a white jeep parked on Washington Street and an unknown white male exited the passenger seat.  The white male met with HUTCHINSON at the BMW's door.  A few minutes later, HUTCHINSON appeared to hand the white male something.  The white male walked back to his white jeep with his hand "cupped" as if he held something.  The male returned to the passenger side of the jeep and left.

73.    I believe the activity discussed in the previous two paragraphs is consistent with drug trafficking.  Two subjects approached HUTCHINSON and had a brief encounter with him. One of the subjects held a small object in his hand after he met with HUTCHINSON.

74.    On September 4, 2024, at approximately 1:19 PM, via electronic surveillance, I observed HUTCHINSON in the driveway of Target Location #3 talking to an unknown black male in a white convertible vehicle.   After a few minutes, the unknown black male left in the white convertible.

75.     On the same date, at approximately 1:39 PM, DEA intercepted a communication[25] between HUTCHINSON and TICKLES JR.  I believe this communication is associated with the surveillance documented in the previous paragraph with the unknown black male in the white convertible.  HUTCHINSON asked TICKLES JR if he had any "ice". TICKLES JR told him no, but he had to get some, and he could bring it to HUTCHINSON.  HUTCHINSON told TICKLES JR that he had a pound here, but he had someone that wanted to buy the pound.  HUTCHINSON continued to say that he sold approximately 2 "zips" and needed to buy a couple more "zips" when TICKLES JR came back.

76.     I believe HUTCHINSON asked TICKLES JR if he had any crystal methamphetamine and used the coded language "ice". HUTCHINSON proceeded to tell TICKLES JR that he had a pound "lick" but needed two more "zips" to sell his customer a whole pound of crystal methamphetamine.  I know "zip" is coded language for one ounce.

77.     I reviewed geolocation on Target Telephone #1 which positioned TICKLES JR in the vicinity of Target Location #3 later that same day at approximately 8:45 PM.  I also reviewed electronic surveillance which showed TICKLES JR's vehicle drive down Washington Street towards Target Location #3 at approximately 8:46 PM.   A few moments later, I observed headlights from a vehicle coming from the same direction that TICKLES JR just traveled, and park in front of Target Location #3.  At approximately 8:56 PM, I observed TICKLES JR's vehicle leave Washington Street. I believe the unknown black male in the white convertible was HUTCHINSON's drug customer for the pound of crystal methamphetamine based off the times of the surveillance and intercepted communication.  It is also of importance to note that TICKLES JR is not very prompt when he meets with a customer to conduct a drug transaction.

---

[25] Intercepted Session #15144 over Target Telephone #1

During numerous occasions TICKLES took several hours before he completed a drug transaction after it was arranged via intercepted communications over Target Telephone #1. This may explain why it took TICKLES JR several hours to arrive at Target Location #3 and deliver HUTCHINSON two ounces of crystal methamphetamine.

78.    On September 7, 2024, at approximately 12:44 PM, DEA intercepted a communication[26] between HUTCHINSON and TICKLES JR. HUTCHINSON told TICKLES JR that he needed some pills. TICKLES JR asked where HUTCHINSON was, and he told TICKLES JR that he was in the hood. TICKLES JR then told HUTCHINSON that he was going to put clothes on.

79.    Based on prior intercepted communications, I know that HUTCHINSON obtained pills from TICKLES JR. When HUTCHINSON told TICKLES JR that he was in the "hood", I know based off of reliable confidential source information that the "hood" is considered the area where Target Location #3 is located. Geolocation was not active on this day so I could not locate TICKLES JR's cell phone position during this call.

80.    On September 9, 2024, DEA intercepted a communication[27] between frequent drug customer Michael STEWART and TICKLES JR. STEWART told TICKLES JR that he was about to get off the exit in Ponchatoula. TICKLES JR told STEWART to get off the last exit and come over by Hoover. It is of importance to note that Hoover (street) also known as President Hoover (street) is connected to Washington Street where Target Location #3 is located. TICKLES JR and others interchangeably use Hoover and Washington.

---

[26] Intercepted Session #15,822 over Target Telephone #1
[27] Intercepted Session #16,402 over Target Telephone #1

81.     On the same date, DEA intercepted a second communication[28] between STEWART and TICKLES JR.  STEWART asked TICKLES JR if he needed to go over to Hoover. TICKLES JR said yes and proceeded to tell STEWART how to get to Target Location #3.  STEWART asked TICKLES JR if it was back where TICKLES JR buddy lived, and TICKLES JR said yes.

82.     A few minutes later, via electronic surveillance, I observed a black truck park in front of Target Location #3.  The investigation previously identified a black truck as STEWART's vehicle.  TICKLES JR approached the passenger side of the black truck and a few moments later STEWART drove away.

83.     Based on STEWART's history of purchasing drugs from TICKLES JR during the ongoing investigation, I believe that TICKLES JR distributed drugs to STEWART upon their meeting at Target Location #3.  I believe that a communication between STEWART and TICKLES JR took place where STEWART ordered a specific drug(s) but the communication was not intercepted[29]. It is also common that frequent drug customers do not always describe each drug order and they simply make arrangements to meet their supplier.  When the customer meets the supplier in person the drug order is then placed.   On other dates communications between STEWART and TICKLES JR were intercepted and during those communications STEWART ordered heroin and other drugs from TICKLES JR.

84.     On September 9, 2024, DEA intercepted a communication[30] between frequent drug customer Cassie HODGE and TICKLES JR.  HODGE told TICKLES JR she was coming down Range Road. TICKLES JR told HODGE that he was on President Hoover.  HODGE told TICKLES JR that she was coming to him.

---

[28] Intercepted Session #16,408 over Target Telephone #1
[29] Certain communications are encrypted or unable to be intercepted such as iPhone to iPhone messages.
[30] Intercepted Session #16,410 over Target Telephone #1

85.     On the same date, DEA intercepted a second communication[31] between HODGE and TICKLES JR.  TICKLES JR told HODGE to come all the way to the back.  HODGE told TICKLES JR that she was at the back about to turn. TICKLES JR told HODGE to come all the way around the back.

86.     A few minutes later, via electronic surveillance, I observed HODGE park her vehicle, which DEA was already familiar with, in front of Target Location #3.  TICKLES JR walked to the roadway from Target Location #3 and met with HODGE at her driver's side window. A few moments later HODGE drove away.

87.     Based on HODGE's history of purchasing drugs from TICKLES JR during the ongoing investigation, I believe that TICKLES JR distributed drugs to HODGE upon their meeting at Target Location #3.  I believe that a communication between HODGE and TICKLES JR took place where HODGE ordered a specific drug(s) but the communication was not intercepted.  On other dates communications between HODGE and TICKLES JR were intercepted and during those communications HODGE ordered heroin and other drugs from TICKLES JR.

88.     The investigation revealed that HUTCHINSON purchased drugs from TICKLES JR then distributed the drugs to his own customers. As stated above, I observed TICKLES JR at Target Location #3 on multiple occasions, and he was involved in drug transactions at said location.  Geolocation on Target Telephone #1 also positioned TICKLES JR in the vicinity of Target Location #3 during these and many other instances. On numerous occasions I, via electronic surveillance, observed HUTCHINSON conduct drug transactions at Target Location #3. Additionally, I recently observed HUTCHINSON post on his social media page numerous pictures of large amounts of cash. HUTCHINSON also posted a picture of himself on the front porch of

---

[31] Intercepted Session #16,414 over Target Telephone #1

Target Location #3 with a firearm next to him on the handrail of the porch. Based on the investigation I believe that HUTCHINSON uses Target Location #3 to store his drugs and/or drug proceeds.

89.     Since the intercept of communications over Target Telephone #1 stopped, I continued to monitor geolocation, review tolls, and conduct surveillance on TICKLES JR and other co-conspirators. Geolocation on Target Telephone #1 and surveillance positioned TICKLES JR in the vicinity of Target Locations #1, #2 and #3 on a consistent basis and where TICKLES JR is known to distribute and store drugs. Toll analysis on Target Telephone #1 and TICKLES JR's secondary cell phone continued to reveal communications with co-conspirators and/or drug customers. I believe that TICKELS JR is still distributing drugs based on toll analysis, electronic/physical surveillance and reliable confidential source information.

90.     I believe that there is probable cause to issue search warrants for the properties, including all vehicles, located at the following locations:

- 2315 Highway 190 Apartment J Hammond, Louisiana 70401 (Target Location #1)

- 41107 N 1st Street Ponchatoula, Louisiana 70454 (Target Location #2)

- 280 Washington Street Ponchatoula, Louisiana 70454 (Target Location #3)

91.     I believe there is illegal drugs, firearms, drug proceeds and documents supporting money laundering, wire fraud and drug distribution at these locations.

Respectfully submitted,


*/s/ Forrest Anthony Reed*
Special Agent Forrest Anthony Reed
Drug Enforcement Administration

Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.

Subscribed and sworn to before me on
this 7th_ day of October 2024
New Orleans, Louisiana.

_____
HONORABLE KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

26

## <u>ATTACHMENT A – TARGET LOCATION TO BE SEARCHED</u>

## DESCRIPTION OF LOCATION TO BE SEARCHED:

**RESIDENCE 1:** 2315 Highway 190 Apartment J Hammond, Louisiana 70401. The target residence is a white vinyl siding apartment with green shutters. The apartment is the last apartment door on the east side when you pull into the apartment complex.

**OTHER LOCATIONS TO BE SEARCHED:** All automobiles and outdoor buildings located within the area directly related to Apartment J.



## ATTACHMENT B – ITEMS TO BE SEIZED

Any and all evidence and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) (distribution and possession with intent to distribute controlled substances), Section 846 (conspiracy to distribute and possess with intent to distribute controlled substances), 18 USC 1956(h); 1956(a)(1)(B) (Money Laundering), 18 USC 1343 (Wire Fraud), and 18 USC 1001 (False Statements).

a.  Any and all financial records relating to drug trafficking, including but not limited to records documenting the receipt and disposition of U.S. currency or currency equivalents, including bank records, receipts, credit card statements, statements relating to investment/brokerage accounts, bank statements, checks, deposit tickets and items, cashier's checks, money orders by whatever form, bank drafts or notes, traveler's checks, wire transfer records, cash disbursement journals or ledgers, cash receipts journals or ledgers, sales receipts, inventory listings, accounts payable records, safe deposit box records and keys, storage facility records and keys, insurance records, records and receipts of expenditures of funds, tax returns, expense or profit records, lease or rental agreement or records, federal and state income tax returns, and any other documents recording or relating to the acquisition, conversion, movement, secreting, transfer, and disbursement of currency and currency equivalents, including any records identifying the source of the receipt and disposition of such funds, such as Currency Transaction Reports (CTRs) and Forms 8300;

b.  Records showing indicia of ownership of vehicles or other means of transportation, including records relating to the purchase and sale of automobiles;

c.  Any and all records of warehouse, house, or apartment leases/purchases;

d.  Any and all records of business or personal travel;

e.  Records and documents reflecting names of individuals or business entities including names, addresses, and telephone numbers, which relate to the business operations conducted by and on behalf of the drug trafficking organization or its members;

f.  Records and items indicating occupancy, residency, and/or ownership of the premises, including bills, lease agreements, loan documents, photographs, envelopes, and personal papers;

g.  Photographs, and/or slides depicting assets purchased by members of the drug trafficking organization or members of the drug trafficking organization associating together;

h.  Any and all correspondences, work papers, and notes related to the drug trafficking organization;

i.  Wireless communication devices and internet-connected devices, tablets and computers;

j.  Any and all secured and/or locked safes, cabinets, boxes, and hidden compartments, wherein documents, drugs, and/or currency may be located;

k.  Narcotics and/or other controlled substances, paraphernalia or equipment used in the preparation, packaging, concealment, or distribution of controlled substances;

l.  Firearms used in furtherance of drug trafficking;

m. Evidence of user attribution showing who used or owned any cellular telephones that are seized;

n.  Any cellular telephones, probable cause to search said phones without another warrant having been established in the affidavit;

o.  Controlled Substances;

p.  Paraphernalia for packaging, cutting, weighting, and distributing controlled substances, including, but not limited to, scales, baggies, and spoons; and

q.  United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

**SEALED**

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    24-mc-2414 |
| 2315 HIGHWAY 190 APARTMENT J HAMMOND, | ) | |
| LOUISIANA 70401 (TARGET LOCATION #1) | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Louisiana _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment "B"

**YOU ARE COMMANDED** to execute this warrant on or before _____ Oct. 7, 2024 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ the Duty Magistrate Judge _____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*      ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    10/7/24       4:10 PM

*Judge's signature*

City and state:     New Orleans, Louisiana

Honorable Karen Wells Roby, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>    24-mc-2414 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|
|        I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date:  _____<br>Subscribed, sworn to, and returned<br>before me this ___ day of _____, 20__.<br><br>_____<br>U.S. Judge or Magistrate |

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A – TARGET LOCATION TO BE SEARCHED</u>

### DESCRIPTION OF LOCATION TO BE SEARCHED:

**RESIDENCE 1:** 2315 Highway 190 Apartment J Hammond, Louisiana 70401. The target residence is a white vinyl siding apartment with green shutters. The apartment is the last apartment door on the east side when you pull into the apartment complex.

**OTHER LOCATIONS TO BE SEARCHED:** All automobiles and outdoor buildings located within the area directly related to Apartment J.



## ATTACHMENT B – ITEMS TO BE SEIZED

Any and all evidence and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) (distribution and possession with intent to distribute controlled substances), Section 846 (conspiracy to distribute and possess with intent to distribute controlled substances), 18 USC 1956(h); 1956(a)(1)(B) (Money Laundering), 18 USC 1343 (Wire Fraud), and 18 USC 1001 (False Statements).

a. Any and all financial records relating to drug trafficking, including but not limited to records documenting the receipt and disposition of U.S. currency or currency equivalents, including bank records, receipts, credit card statements, statements relating to investment/brokerage accounts, bank statements, checks, deposit tickets and items, cashier's checks, money orders by whatever form, bank drafts or notes, traveler's checks, wire transfer records, cash disbursement journals or ledgers, cash receipts journals or ledgers, sales receipts, inventory listings, accounts payable records, safe deposit box records and keys, storage facility records and keys, insurance records, records and receipts of expenditures of funds, tax returns, expense or profit records, lease or rental agreement or records, federal and state income tax returns, and any other documents recording or relating to the acquisition, conversion, movement, secreting, transfer, and disbursement of currency and currency equivalents, including any records identifying the source of the receipt and disposition of such funds, such as Currency Transaction Reports (CTRs) and Forms 8300;

b. Records showing indicia of ownership of vehicles or other means of transportation, including records relating to the purchase and sale of automobiles;

c. Any and all records of warehouse, house, or apartment leases/purchases;

d.  Any and all records of business or personal travel;

e.  Records and documents reflecting names of individuals or business entities including names, addresses, and telephone numbers, which relate to the business operations conducted by and on behalf of the drug trafficking organization or its members;

f.  Records and items indicating occupancy, residency, and/or ownership of the premises, including bills, lease agreements, loan documents, photographs, envelopes, and personal papers;

g.  Photographs, and/or slides depicting assets purchased by members of the drug trafficking organization or members of the drug trafficking organization associating together;

h.  Any and all correspondences, work papers, and notes related to the drug trafficking organization;

i.  Wireless communication devices and internet-connected devices, tablets and computers;

j.  Any and all secured and/or locked safes, cabinets, boxes, and hidden compartments, wherein documents, drugs, and/or currency may be located;

k.  Narcotics and/or other controlled substances, paraphernalia or equipment used in the preparation, packaging, concealment, or distribution of controlled substances;

l.  Firearms used in furtherance of drug trafficking;

m. Evidence of user attribution showing who used or owned any cellular telephones that are seized;

n.  Any cellular telephones, probable cause to search said phones without another warrant having been established in the affidavit;

o.  Controlled Substances;

p.  Paraphernalia for packaging, cutting, weighting, and distributing controlled substances, including, but not limited to, scales, baggies, and spoons; and

q.  United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled.